UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

—————

RICKO LOTT,

          Petitioner,                    Case No. 1:08-cv-481

v.                                        Honorable Robert J. Jonker

JOHN PRELESNIK,

          Respondent.

_____/

## REPORT AND RECOMMENDATION

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner pleaded guilty in the Ingham County Circuit Court to one count of assault with intent to commit murder, MICH. COMP. LAWS § 750.83; and one count of armed robbery, MICH. COMP. LAWS § 750.529. The trial court sentenced him on August 3, 2005, to concurrent prison terms of twenty-five to fifty years. Petitioner raises the following eight grounds for habeas corpus relief:

    I.      THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DEFENDANT'S MOTION TO WITHDRAW HIS PLEA WHERE DEFENDANT WAS UNDER DURESS AND THE PLEA WAS THEREFORE NOT KNOWING, UNDERSTANDING AND VOLUNTARY, CONTRARY TO THE FIFTH AND FOURTEENTH AMENDMENTS.

    II.     THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DEFENDANT'S MOTION TO WITHDRAW HIS PLEA WHERE DEFENDANT WAS COERCED BY HIS ATTORNEY TO PLEAD GUILTY AND THE PLEA WAS THEREFORE NOT KNOWING, UNDERSTANDING AND VOLUNTARY, CONTRARY TO THE FIFTH AND FOURTEENTH AMENDMENTS.

III.    THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DEFENDANT'S MOTION TO WITHDRAW HIS PLEA WHERE DEFENDANT DID NOT UNDERSTAND THE TERMS OF THE PLEA AGREEMENT AND THE PLEA WAS THEREFORE NOT KNOWING, UNDERSTANDING AND VOLUNTARY, CONTRARY TO THE FIFTH AND FOURTEENTH AMENDMENTS.

IV.    DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN CONNECTION WITH HIS PLEA, CONTRARY TO THE SIXTH AMENDMENT AND THE MICHIGAN CONSTITUTION [FOR]:

    A.    FAILING TO PROPERLY EXPLAIN THE SENTENCE CONSEQUENCES OF [PETITIONER'S] PLEA;

    B.    FAILING TO PREPARE FOR TRIAL;

    C.    EXERTING PRESSURE ON [PETITIONER] TO CONCEAL LACK OF PREPARATION; [AND]

    D.    FAILING TO REQUEST A COMPETENCY HEARING.

V.    THE TRIAL COURT ERRED IN SCORING OFFENSE VARIABLES 2 AND 9 WHERE THE OFFENSE VARIABLES WERE SCORED IN VIOLATION OF [PETITIONER'S] SIXTH AMENDMENT RIGHT TO A JURY TRIAL.

VI.    THE TRIAL COURT ABUSED IT'S DISCRETION IN DENYING DEFENDANT'S MOTION FOR DISCOVERY OF THE POLICE INTERNAL AFFAIRS REPORT, CONTRARY TO THE FOURTEENTH AMENDMENT RIGHT TO A FAIR TRIAL AND DUE PROCESS.

VII.    WAS DEFENDANT DEPRIVED OF HIS LIBERTY WITHOUT DUE PROCESS OF LAW, AND OF THE RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL, BY THE DEFICIENT PERFORMANCE OF BOTH, COURT-APPOINTED TRIAL COUNSEL, AND APPELLATE COUNSEL(S) [SIC]?

VIII.    WAS DEFENDANT'S DUE PROCESS RIGHT TO A FAIR TRIAL VIOLATED WHEN THE PROSECUTOR FAILED TO TIMELY DISCLOSE CRITICAL *BRADY* MATERIAL FOR IMPEACHMENT EVIDENCE PURPOSES?

Respondent filed an answer to the petition (docket #8). Upon review and applying the AEDPA standards, I find that Petitioner's claims are without merit. Accordingly, I recommend that the petition be denied.

## Procedural History

### A.    Trial Court Proceedings

Petitioner was charged in the Ingham County Circuit Court with assault with intent to murder, armed robbery and possession of a firearm during the commission of a felony. Petitioner's appointed trial counsel, Joseph Poprawa, brought a motion to suppress identification testimony, which was denied by the trial court on January 20, 2005. (*See* 1/20/05 Ord. Denying Mot. to Suppress, docket #20.) Counsel then filed an application for interlocutory appeal regarding the trial court's decision, which was denied by the Michigan Court of Appeals. (*See* 1/28/05 Mich. Ct. App. Order, docket #20.)

On February 7, 2005, Petitioner pleaded guilty in the Ingham County Circuit Court to assault with intent to murder and armed robbery. The trial court described the plea agreement as follows:

> If you plead guilty to Count I, assault with intent to commit murder, Count II, armed robbery, Count III will be dismissed. It's understood that you will acknowledge or ratify each of the convictions set forth in the supplemental portion of the information. On count, then, I think there are six prior convictions . . . . And you will acknowledge those as part of the agreement. The prosecutor recommends that in terms of any incarceration, *the minimum be capped at 25 years*, if the Court wishes to establish a minimum. In excess of that, you have the right to withdraw your guilty plea.[1]

[1]A plea agreement that includes a specific sentence is referred to as a "*Cobbs*" agreement. In *People v. Cobbs*, 443 Mich. 276, 505 N.W.2d 208, 212 (Mich.1993), the Michigan Supreme Court authorized a particular type of plea agreement wherein a judge states the appropriate length of sentence, which is non-binding, but if the defendant subsequently pleads guilty, that defendant retains the absolute right to withdraw the plea if the judge later determines that the sentence must exceed the preliminary evaluation.

(Plea Tr. 15, docket #23.)  The trial court further informed Petitioner on multiple occasions that he could be sentenced to life imprisonment.  (*Id*. at 9, 36.)  Petitioner testified that he went to school through eleventh grade and could read English.  (*Id*. at 36.)  He indicated that he understood the rights he was waiving by pleading guilty, that he understood and accepted the terms of the plea agreement and that his plea was not the result of threats, coercion or duress.  (*Id*. at 9-19, 36.)  Petitioner also acknowledged that he could be sentenced to a maximum of life imprisonment.  (*Id*. at 9-10, 36-37.)  He further testified that he was satisfied with the representation provided by his attorney.  (*Id*. at 38-39.)

For the factual basis of the plea, Petitioner admitted on the record that he and his co-defendant, Dale Price, robbed Nedra Cox at gunpoint at her apartment in Lansing on April 29, 2004. (Plea Tr. 20-22.)  The two men found marijuana and twenty dollars in Cox's apartment.  (*Id*. at 22-26.)  Before they could leave with the drugs and cash, a Lansing police officer burst into the apartment.  (*Id*. at 28.)  Petitioner testified that he fired four shots in the direction of the officer.  (*Id*. at 29-33.)  Petitioner did not dispute that the officer was hit by all four shots.  (*Id*. at 30-31, 34.)  Two of the shots went into the officer's bullet-proof vest, the third shot went through his forearm and the fourth shot went through his rear, nearly severing the femoral artery.  (*Id*. at 34.)  Petitioner also admitted to committing six previous felonies, which provided the basis for sentencing him as an habitual offender.  (*Id*. at 37-38.)

Shortly after pleading guilty, Petitioner moved to withdraw his guilty plea and requested a *Ginther*[2] hearing on his claims of ineffective assistance of counsel.  The trial court

---

[2]*People v. Ginther*, 212 N.W.2d 922 (Mich. 1973).

conducted hearings on Petitioner's motions on June 21 and 30, 2005, and July 5, 2005. (*See* Hr'gs on Mot. to Withdraw Guilty Plea, dockets ##15-17.) Petitioner's trial counsel, Joseph Poprawa, testified that he had been a criminal defense lawyer for 27 years. (Withdrawal Hr'g Tr. I, docket #15, 23.) Mr. Poprawa met with Petitioner at the jail approximately ten times and provided Petitioner with copies of police reports, lab reports, and other materials that were obtained through discovery in his case. (*Id*. at 12-17.) During their meetings, Petitioner asked intelligent questions and they engaged in lengthy conversations over various points of law relating to his case. (*Id*. at 14.) Petitioner also conducted his own legal research and provided counsel with cases and legal pleadings. (*Id.* at 14-15.) Counsel filed Petitioner's hand-written motion to dismiss under Michigan's speedy trial statute, which was composed of a three-page motion and an eight-page supporting brief. (*Id.* at 15-16.) In addition, counsel filed Petitioner's hand-written motion to dismiss based upon police misconduct as a supplement to counsel's motion on the same grounds. (*Id*. at 16.) Thus, while counsel was aware that Petitioner was developmentally disabled, it was not apparent from working with Petitioner on his case. (*Id*. at 33.)

 Mr. Poprawa testified that he discussed the scoring of the sentencing guidelines with Petitioner, including his potential minimum and maximum sentences. (*Id.* at 18-20.) He also explained the terms of the plea agreement to Petitioner, including the 25-year cap on his minimum sentence. (*Id*. at 21-22, 33.) Mr. Poprawa told Petitioner that he would argue for the trial court to impose a minimum sentence of less than 25 years because Petitioner's previous offenses were not violent in nature, but there was no guarantee that the court would impose a minimum sentence of less than 25 years. (*Id*. at 21.) Mr. Poprawa testified that he never told Petitioner that his maximum sentence would be 25 years or that he would get a life sentence if he did not plead guilty. (*Id*. at 36.)

- 5 -

Mr. Poprawa also explained to Petitioner that he was subject to consecutive sentencing because he was on parole at the time he committed the instant offense. (*Id*. at 19-20.)

Counsel was prepared to proceed with trial on February 7, 2005. (*Id*. at 29.) On that day, the prosecution moved to endorse Calvin Hill as a witness and provided Mr. Poprawa with a copy of Hill's statement. (*Id*.) Counsel had a vigorous discussion with the prosecutor about Hill's testimony and placed an objection on the record concerning the late endorsement of the witness. However, Mr. Poprawa did not pursue the matter any further because he believed that the prosecutor would be permitted to endorse the witness. (*Id*. at 30.) Mr. Poprawa believed that Petitioner's defensive position was weak and that Hill's statement "was just another nail in the proverbial coffin." (*Id*. at 32.) Mr. Poprawa advised Petitioner that the plea agreement was his best option, but did not force him to take the plea. (*Id*. at 44, 49.) Mr. Poprawa also explained the terms of the plea agreement to Petitioner's mother and grandmother, Claudia and Barbara Lott. (*Id*. at 22-23, 38-39.) Counsel encouraged them to discuss the realities of the situation with Petitioner. (*Id*. at 38-39.) After several conversations with counsel, and his mother and grandmother, Petitioner decided to plead guilty. (*Id*. at 48-49.)

Barbara Lott, Petitioner's grandmother, testified that Mr. Poprawa advised her that the plea was a "good deal," and it was in Petitioner's best interest to plead guilty. (Withdrawal Hr'g Tr. I, 57, 70-71.) With regard to his sentence, she could not recall Mr. Poprawa's exact words, but Mr. Poprawa told her that "[t]he cap was supposed to be 25 years" meaning "that would be all he would get." (*Id*. at 59-60, 72.) However, Barbara agreed that she wrote "25 minimum cap" in her notes from February 7. (*Id*. at 78.)

Claudia Lott, Petitioner's mother, testified that Petitioner was diagnosed as learning disabled and emotionally impaired. (Withdrawal Hr'g Tr. II, 5-6, docket #16.) Mr. Poprawa approached Claudia on February 7 regarding the plea agreement he had negotiated with the prosecutor. (*Id*. at 8.) Claudia "wasn't going to go for some 25 years to life," but Mr. Poprawa insisted that the plea agreement was in Petitioner's best interest because Petitioner could get a longer sentence if he went to trial. (*Id*. at 11-12.) Initially, Claudia gave inconsistent testimony regarding whether Mr. Poprawa told her that twenty-five years was the minimum or maximum sentence Petitioner would receive under the plea, but upon questioning by the trial court to clarify her testimony, she testified that Mr. Poprawa told her that the sentence agreement was for 25 years to life. (*Id*. at 16-19.) Claudia testified that her mother and Petitioner also were present during the discussion about the sentence agreement. (*Id*. at 19-20.) According to Claudia, Mr. Poprawa's overall demeanor was sympathetic toward Petitioner, who was scared and crying. (*Id*. at 25.) Petitioner still was upset when the plea was taken thirty to forty-five minutes later. (*Id*. at 27.)

Petitioner testified that on February 7, 2005, the day he was scheduled to go to trial, Mr. Poprawa informed him that the prosecutor was giving Calvin Hill immunity to testify against Petitioner. (Withdrawal Hr'g Tr. II, 43.) Because Hill's testimony would be damaging to the defense, Mr. Poprawa told him that it would be in his best interest to take the plea agreement. (41-43.) According to Petitioner, Mr. Poprawa said he was "screwed." (*Id*. at 42.) Mr. Poprawa allegedly told Petitioner that his maximum sentence would be 25 years if he pleaded guilty, but the judge would give him life if he was convicted at trial. (*Id.* at 44-49.) Petitioner testified that after a side bar with the trial court, Mr. Poprawa stated to him: "[T]he judge wanted to know if you're serious about going to trial because if you go to trial and lose you're going to get life. He said the

judge really don't want to give you life, if you take this *Cobb*, he'll be lenient against you." (*Id*. at 50, 59-60.) At that point, Petitioner felt that he had no choice but to take the plea. (*Id*.) Petitioner testified that he agreed to everything the court said during the plea because Mr. Poprawa told him that was the only way that the court would accept the plea. (*Id*. at 52-53, 71.) Petitioner further testified that he had a learning disability and could only read at the first grade level. (*Id*. at 52.)

At the conclusion of the July 5 hearing, the trial court concluded that Petitioner's plea was knowingly, voluntarily and understandingly made, and therefore denied his motion to withdraw his plea. (Withdrawal Hr'g Tr. III, 40-48, docket #17.) In support of his decision, the trial court stated in part:

> I think [Petitioner] was fully and completely informed as to the detail of the plea agreement. He acknowledged it on the record that he understood the plea agreement. I find nothing here that somehow there was some compulsion that it was not freely, knowingly and voluntarily given. There's nothing to suggest that Mr. Poprawa told him he had no choice in terms of anything that's available, in his affidavit, notwithstanding, and the testimony that he now gives are not supported on this record. I find, based on what I've been told, that the Defendant told Mr. Poprawa that he wanted to enter a plea. And as I say, every piece, every independent piece of evidence that I've reviewed and testimony clearly suggests that he knew what the minimum was of 25, that he accepted that, that there was no confusion in his mind. He said he wasn't confused about it. And in short, I find the plea was knowingly, voluntarily, understandingly made and that he understood fully the terms of the agreement. That Mr. Poprawa complied fully with his responsibilities in this context by completely informing Mr. Lott as to the proposed plea agreement, as to the pitfalls, made a recommendation in terms of what should be done, but left it up to Mr. Lott, that Mr. Lott expressed to him a willingness to go ahead with the plea, fully understanding what the terms were.

(*Id*. at 46-47.)

The trial court sentenced Petitioner on August 3, 2005, to concurrent prison terms of 25 to 50 years. (Sentencing Transcript, (S. Tr.), 17, docket #25.) Petitioner's sentence was to be served consecutive to a sentence for a previous felony conviction for which Petitioner was on parole at the time he committed the instant offense. (*Id*. at 24-25.)

- 8 -

## B.    Direct Appeal

Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals.  His brief, which was filed by counsel on August 3, 2006, raised the first six issues raised in this application for habeas corpus relief.  (*See* Def.-Appellant's Br. on Appeal, docket #21.)  The Michigan Court of Appeals denied Petitioner's application for leave to appeal on September 19, 2006, for lack of merit in the grounds presented.  (*See* Mich. Ct. App. Order, docket #21.)

Petitioner filed a *pro per* application for leave to appeal to the Michigan Supreme Court.  Petitioner raised the same six claims raised before and rejected by the Michigan Court of Appeals.  By order entered February 27, 2007, the Michigan Supreme Court denied his application for leave to appeal because it was not persuaded that the questions presented should be reviewed. (*See* 2/27/07 Mich. Order, docket #22.)

## C.    Habeas Corpus Proceedings

Petitioner filed this habeas corpus action on or about May 21, 2008, raising the same six claims that he presented on direct appeal in the Michigan appellate courts. On October 29, 2008, Petitioner filed a motion to stay the petition because he had new claims that he intended to raise in the state court in a motion for relief from judgment. This Court issued an opinion and order on February 27, 2009, requiring Petitioner to identify the claims that he intended to raise in his motion for relief from judgment and to show cause within thirty days why he was entitled to a stay of the proceedings. Petitioner filed a timely response. In an order issued on May 1, 2009, the Court granted Petitioner's motion to stay the proceedings while he exhausted the three new claims identified in his response.  However, the Court noted that because Petitioner filed his motion to stay five months after the statute of limitations expired on May 28, 2008, the new claims would be considered timely

filed only if they "related back" to the original petition within the meaning of *Mayle v. Felix*, 545 U.S. 644 (2005). The Court deferred that decision until after Petitioner exhausted the claims and returned to this Court for further proceedings on his habeas petition

### D.     State Post-Conviction Relief

Petitioner filed a motion from relief from judgment in the Ingham County Circuit Court on May 27, 2009, raising three new claims for relief, including his seventh and eighth grounds for habeas corpus relief. The trial court issued a one-page order denying Petitioner's motion on July 20, 2009, for lack of merit in the grounds presented. The trial court further stated that "Defendant has shown no entitlement to relief as required by MCR 6.508(D)." (*See* 7/20/09 Order Denying Mot. for Relief from J., docket #48.) The Michigan Court of Appeals and the Michigan Supreme Court denied Petitioner's applications for leave to appeal on May 6, 2010 and October 26, 2010, respectively, for failure to establish entitlement to relief under MICH.CT. R. 6.508(D). (*See* 5/6/10 Mich. Ct. Order, docket #49; 10/26/10 Mich. Order, docket #50.)

### E.     Resumption of Habeas Corpus Proceedings

On April 15, 2011, Petitioner filed motions to amend and for equitable tolling in his habeas corpus action. The Court entered an order reopening the case and directing Respondent to file supplemental Rule 5 materials with regard to Petitioner's motion for relief from judgment in the state court so that the Court could determine whether Petitioner's new claims related back to the claims raised in the original petition. The Court further ordered Respondent to file a response to Petitioner's motions to amend and for equitable tolling, specifically addressing whether the claims presented in Petitioner's motion to amend related back, and if they did not, whether Petitioner was

entitled to equitable tolling of the statute of limitations. The Court held Petitioner's motions in abeyance pending Respondent's submission of a response and Rule 5 materials.

In an opinion and order issued on March 26, 2012, the Court granted Petitioner's motion to amend with regard to the following timely claims: (1) trial counsel was ineffective for failing to move for a forensic referral to determine the extent of Petitioner's mental impairment before allowing Petitioner to enter a guilty plea; and (2) Petitioner's due process rights were violated when the prosecutor failed to timely disclose critical *Brady* material for impeachment evidence purposes. The motion was denied with regard to the remaining untimely claims of ineffective assistance of counsel. The Court also denied Petitioner's motion for equitable tolling. This case now is before the Court on plenary review of the claims presented in the original petition, as well as the timely claims raised in his motion to amend.

### Standard of Review

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). "Yet, while the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). Thus, the inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at

411; *accord Bell*, 535 U.S. at 699.  Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable."  *Id.* at 410.

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA.  *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011); *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference).  The presumption, however, is not irrebuttable.  *Johnson*, 133 S. Ct. at 1096.  Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review.  *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *Richter*, 131 S. Ct. at 785 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

## Discussion

### A.    Grounds I-III: Constitutional Validity of Guilty Plea

Petitioner contends that the trial court erred by denying his motion to withdraw the plea on grounds that the plea was not knowing, understanding and voluntary because Petitioner was under duress (Ground I), his attorney coerced him to plead guilty (Ground II) and he did not understand the terms of the plea (Ground III).  At the outset, Petitioner has no federal constitutional right or absolute right under state law to withdraw his guilty plea.  *See Carwile v. Smith*, 874 F.2d

382 (6th Cir. 1989); *Adams v. Burt*, 471 F. Supp.2d 835, 843 (E.D. Mich. 2007) (internal citations omitted). Therefore, unless the plea violated a clearly-established constitutional right, whether to allow the withdrawal of a criminal defendant's guilty plea is discretionary with the state trial court. *See Hoffman v. Jones*, 159 F. Supp. 2d 648, 655 (E.D. Mich. 2001).

        The constitutional validity of a guilty plea entered in the state courts is to be judged under the due-process standard set forth by the United States Supreme Court in *Boykin v. Alabama*, 395 U.S. 238 (1969). Under *Boykin*, a guilty plea must be knowing and voluntary in order to withstand scrutiny under the Due Process Clause. A criminal defendant enters a guilty plea knowingly when he understands the nature of the charge and the "direct consequences" of his guilty plea. *See Brady v. United States*, 397 U.S. 742, 748 (1970). In general, a defendant is aware of the direct consequences of the plea if he or she is aware of the maximum and minimum (if any) sentence that may be imposed. *See King v. Dutton*, 17 F.3d 151, 153-54 (6th Cir. 1994); *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 259 (6th Cir. 1991).

        When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* The petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Garcia*, 991 F.2d at 328; *see Parke v. Raley*, 506 U.S. 20, 29 (1992).

The transcript of the plea proceedings in this case shows that the trial court thoroughly questioned Petitioner regarding his understanding of the charges against him, the terms of the plea agreement, the minimum and maximum sentences that he faced under the plea, the rights he was waiving by pleading guilty, and whether his plea was voluntary and free of coercion. At the conclusion of the plea hearing, the trial court found that petitioner's plea of guilty was entered knowingly and voluntarily. After conducting a thorough hearing on Petitioner's motion to withdraw the guilty plea, the trial court again concluded that the plea was knowing, intelligent and voluntary. Under the above-cited authorities, these findings are to be accorded a presumption of correctness.

Petitioner asserts that his plea was not knowing, intelligent and voluntary because it was the result of duress and coercion by defense counsel. At the plea hearing, however, Petitioner testified that his plea was not the result of threats, coercion or duress. The following exchange took place between the trial court and Petitioner:

The Court:    Have any other promises been made to you to get you to plead guilty here today?

Petitioner:    No.

The Court:    Anyone use any force on you to get you to plead guilty?

Petitioner:    No.

The Court:    Threats, coercion, duress?

Petitioner:    No.

The Court:    Anyone making you plead guilty?

Petitioner:    No.

The Court:    You're pleading guilty because you are guilty?

Petitioner:    Yes, sir.

(Plea Tr. 19.)  Petitioner also acknowledged that by pleading guilty, he was giving up the right to claim that it was not his choice to enter the guilty plea.  (*Id.* at 13.)

At the hearing on Petitioner's motion to withdraw the plea, Mr. Poprawa testified that he advised Petitioner that the plea agreement was his best option, but did not force him to take the plea.  (Withdrawal Hr'g Tr. I, 44, 49.)  Mr. Poprawa believed that Petitioner's defensive position was weak and that Calvin Hill's statement "was just another nail in the proverbial coffin."  (*Id.* at 32.)  He also told Petitioner's mother and grandmother that the plea was in Petitioner's best interest because his defense was weak and he risked getting a longer sentence if he went to trial.  (Withdrawal Hr'g Tr. I, 57, 70-71; Tr. II, 11-12).  Petitioner's mother described Mr. Poprawa as sympathetic toward Petitioner during those discussions.  (Withdrawal Hr'g Tr. II, 25.)  Nothing in the record establishes that counsel's strong recommendation that Petitioner plead guilty rose to the level of "active coercion," and the transcript of Petitioner's own words at the plea hearing establish that he affirmed that his plea was knowing and voluntary.  In light of Petitioner's plea colloquy and the testimony provided at the hearing on Petitioner's motion to withdraw his plea, Petitioner's bare claim that his plea was the result of coercion can hardly be said to overcome the presumption of truthfulness which attaches to statements made during the plea colloquy.

Petitioner further claims that he suffers from mental impairments that limit his ability to make important decisions while under pressure.  Petitioner did not disclose any learning or emotional impairments at the plea hearing. He informed the court that he had completed school through the eleventh grade and could read English.  (Plea Tr. 36.)  However, at the hearing on the motion to withdraw the plea, Petitioner testified that he had a learning disability and could read only at the first-grade level.  (Withdrawal Hr'g Tr. II, 52.)  His mother further testified that Petitioner was diagnosed as learning disabled and emotionally impaired.  (Withdrawal Hr'g Tr. II, 5-6.)  Assuming

Petitioner was learning disabled and/or emotionally impaired, there is no evidence in the record of any mental or psychological problems which impaired his ability to understand his criminal proceedings or the nature of his plea. Moreover, at the time of his plea, Petitioner was thirty-four years old and had several prior felony convictions. Mr. Poprawa testified that Petitioner asked intelligent questions and they engaged in lengthy conversations over various points of law relating to Petitioner's case. (Withdrawal Hr'g Tr. I, 14.) Petitioner also conducted his own legal research and provided counsel with cases and legal pleadings. (*Id.* at 14-15.) Two of those pleadings were filed with the trial court. (*Id.* at 15-16.) Petitioner's experience with the criminal justice system and his ability to conduct legal research and draft pleadings in his case supports the trial court's finding that Petitioner's plea was knowing, intelligent and voluntary.

Petitioner also contends that he did not understand the terms of the plea, i.e., the length of his sentence. Petitioner believed that his maximum sentence would be 25 years, not that his minimum sentence would not exceed 25 years. The record supports the trial court's conclusion that Petitioner was fully aware of the minimum and maximum sentence he faced under the plea. The trial court explicitly stated during the plea hearing that the minimum sentence would be capped at 25 years. (Plea Tr. 14-15.) The trial court further informed Petitioner on multiple occasions that he could be sentenced to life imprisonment. (*Id.* at 9, 36.) Petitioner acknowledged at least twice that he could be sentenced to a maximum of life imprisonment. (*Id*. at 10, 37.) Petitioner further stated at the plea hearing that he understood and accepted the terms of the plea agreement and did not have any questions about the terms of the agreement. (*Id.* at 15-16.) At the hearing on Petitioner's motion to withdraw his plea, Mr. Poprawa testified that he explained the terms of the plea agreement to Petitioner, including the 25-year cap on his minimum sentence. (Withdrawal Hr'g Tr. I, 36.) Petitioner's grandmother wrote "25 minimum cap" in her notes from the day of the plea

agreement. (*Id*. at 78.) Petitioner's mother also testified that Mr. Poprawa told her that the sentence agreement was for 25 years to life. (Withdrawal Hr'g Tr. II, 16-19.) According to Petitioner's grandmother, Petitioner was present during the discussion with Mr. Poprawa about the sentence agreement. (*Id*. at 19-20.)

In light of the foregoing, the trial court's determination that Petitioner's plea was knowing and voluntary was not an unreasonable application of clearly established Supreme Court precedent, nor was it based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, Petitioner is not entitled to habeas corpus relief.

## B. Grounds IV and VII: Ineffective Assistance of Counsel

In his fourth ground for habeas corpus relief, Petitioner claims that his counsel was ineffective for failing to explain the consequences of his plea. Specifically, Petitioner maintains that counsel did not properly explain that his minimum sentence was to be capped at 25 years. Instead, Petitioner believed that his maximum sentence would be 25 years. Petitioner further alleges that counsel failed to prepare for trial and pressured Petitioner to plead guilty to conceal his lack of preparation. Additionally, Petitioner claims that counsel was ineffective for failing to request a competency hearing when Petitioner was mentally impaired and unable to make intelligent rational decisions. In his seventh ground for habeas corpus relief, Plaintiff reasserts his claim that trial counsel was ineffective for failing to move for a forensic examination to determine the extent of Plaintiff's mental impairment.[3]

---

[3]As previously discussed, Petitioner raised additional claims of ineffective assistance of trial and appellate counsel in Ground VII, but the Court ruled that those claims were barred by the statute of limitations.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Petitioner claims that his counsel was ineffective for failing to explain the consequences of his plea. Specifically, Petitioner maintains that counsel told him that his maximum sentence would be 25 years, not that his minimum sentence would be capped at 25 years. As previously discussed, the record supports the trial court's conclusion that Petitioner was fully aware of the minimum and maximum sentences he faced under the plea. At the hearing on Petitioner's motion to withdraw, Mr. Poprawa testified that he explained the terms of the plea agreement to Petitioner, including the 25-year cap on his minimum sentence. (Withdrawal Hr'g Tr. I, 36.) Mr. Poprawa also explained the 25-year cap on Petitioner's minimum sentence to Petitioner's mother and grandmother, who were present when Petitioner decided to plead guilty. (Withdrawal Hr'g Tr. I, 78; Tr. II, 16-19.) Likewise, the trial court explicitly stated during the plea hearing that the minimum sentence would be capped at 25 years. (Plea Tr. 14-15.) The trial court further informed Petitioner that he could be sentenced up to life imprisonment. (Plea Tr. 9, 37.) In light of the record, Petitioner's unsupported allegations are insufficient to establish that counsel failed to properly advise him with regard to his sentence.

Petitioner contends that counsel failed to prepare for trial and exerted pressure on Petitioner to plead guilty in order to conceal his lack of preparedness. There is no evidence that counsel's recommendation that Petitioner plead guilty was the result of a lack of preparedness. To the contrary, counsel diligently pursued Petitioner's case and filed numerous pre-trial motions, including a motion to quash, motion to compel, motion to dismiss, motion for residue testing, and a motion to suppress identification testimony. Counsel filed an interlocutory appeal with regard to the trial court's denial of the motion to suppress the identification, which was denied by the Michigan Court of Appeals. (Withdrawal Hr'g Tr. I, 42-43.) Moreover, counsel fully intended to proceed with trial on February 7. (*Id*. at 29.) It was not until the late endorsement of Calvin Hill

that counsel advised Petitioner that a guilty plea was his best option, but counsel did not force him to take the plea.  (*Id.* at 29-32, 44, 49.)

Furthermore, any claim that counsel pressured Petitioner into pleading guilty conflicts with his sworn testimony at the plea hearing that he was doing so of his own free will.  As discussed above, Petitioner testified at the plea hearing that he was satisfied with counsel's representation and denied that any threats or promises had been made or that he had been coerced into pleading guilty.  (Plea Tr. 19, 38-39.)  As aptly stated by the Sixth Circuit when faced with a challenge to a plea bargain based upon alleged off-the-record statements:

> If we were to rely on [the petitioner's] alleged subjective impression rather than the record, we would be rendering the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statements during the plea colloquy . . . indicating the opposite. This we will not do, for the plea colloquy process exists in part to prevent petitioners . . . from making the precise claim that is today before us. "[W]here the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry."

*Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)).  Petitioner's bald assertion that counsel coerced him to plead guilty fails to rebut the strong presumption that the statements he made at the plea hearing were true and correct.  *See Garcia*, 991 F.2d at 328.  Although Petitioner may in hindsight regret entering the plea, such "buyer's remorse" does not equate to finding that his counsel was ineffective or that his plea was involuntary.

In addition, Petitioner claims that counsel failed to conduct discovery of the available internal affairs police report which may have shown that Petitioner was not the shooter.  After he was sentenced, Petitioner filed a *pro per* motion for discovery of the alleged police internal affairs report concerning the underlying incident.  The trial court denied the motion on the ground that it

was waived by Petitioner's guilty plea.  The court also found that there could not have been any exculpatory information contained in the alleged report.  Moreover, according to the prosecutor's response brief filed in the Michigan Court of Appeals, no internal affairs report exists with regard to the this case.  Petitioner's discovery motion was based on nothing more than conjecture.  The prosecutor further indicated that the incident report referred to in Petitioner's motion for discovery was included in the pre-trial discovery materials submitted to the defense.  *(See* Appellee's Br. on Appeal, docket #47.)  Petitioner, therefore, cannot show that counsel's failure to seek discovery of the report fell below an objective standard of reasonableness.

Petitioner further asserts that counsel was ineffective for failing to request a competency hearing to determine the extent of Plaintiff's mental impairment.  A criminal defendant has a due process right not to be tried while incompetent.  *Drope v. Missouri*, 420 U.S. 162, 171–72 (1975); *Pate v. Robinson*, 383 U.S. 375, 385 (1966).  To be competent to stand trial, a defendant must have "a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and must possess "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam).  Counsel's failure to request a competency hearing may amount to ineffective assistance "provided there are sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the defendant's competency, and there is a reasonable probability that the defendant would have been found incompetent to stand trial had the issue been raised and fully considered." *Jermyn v. Horn*, 266 F.3d 257, 283 (3d Cir. 2001).

Here, Petitioner cannot show that counsel was ineffective for failing to request a competency hearing.  Even if Petitioner suffered from some learning or mental disability, he has not shown that he suffered from a disability that rendered him incompetent to stand trial or enter his

plea. Counsel testified that Petitioner's mental impairment or disability was not apparent from working with Petitioner on his case. (Withdrawal Hr'g Tri. I, 33.) As previously discussed, Mr. Poprawa testified that Petitioner asked intelligent questions and they had lengthy conversations over various points of law relating to his case. (*Id*. at 14.) Petitioner also conducted his own legal research and provided counsel with cases and legal pleadings, some of which were filed with the court. (*Id.* at 14-16.) The record of the plea colloquy also demonstrates that Petitioner understood the nature of the proceedings. In short, Petitioner has presented nothing to show that counsel should have been aware of the need for a competency hearing or that Petitioner was in fact incompetent to understand the nature of the proceedings and assist in his defense. Petitioner has failed to show that counsel's failure to request a competency examination was objectively unreasonable. *See Kalasho v. Cason*, 77 F. App'x 774, 776 (6th Cir. 2003) (counsel not ineffective where petitioner "appeared to have participated competently in his defense"); *Walker v. Gibson*, 228 F.3d 1217, 1231 (10th Cir. 2000) (counsel not ineffective where petitioner presented evidence that he suffered from mental disorder where nothing in the record showed that petitioner was unable to consult with counsel or understand the proceedings); *Eddmonds v. Peters*, 93 F.3d 1307, 1317 (7th Cir. 1996) (counsel not ineffective where record showed that petitioner was able to assist in his defense).

In summary, Petitioner failed to satisfy the first prong of the *Strickland* test with regard to his claims of ineffective assistance of counsel. Where counsel's performance did not fall below an objective standard of reasonableness, the court need not reach the question of prejudice. *See Mason v. Mitchell*, 543 F.3d 766, 789 (6th Cir. 2008). Consequently, I cannot find that the decision of the Michigan Court of Appeals is an unreasonable application of *Strickland*.

## C.    **Ground V:  Sentence Scoring**

In his fifth ground for habeas corpus relief, Petitioner contends that the scoring of Offense Variables 2 and 9 on the basis of factual findings or conclusions that were not submitted and proven to a jury beyond a reasonable doubt, nor admitted by his plea, and the resulting enhancement of the sentencing guideline range violated his Sixth Amendment right to trial as set forth in *Blakely v. Washington*, 542 U.S. 296 (2004).  *Blakely* concerned the State of Washington's determinate sentencing system, which allowed a trial judge to elevate the maximum sentence permitted by law on the basis of facts not found by the jury but by the judge.  Applying the Washington mandatory sentencing guidelines, the trial judge found facts that increased the maximum sentence faced by the defendant.  The Supreme Court found that this scheme offended the Sixth Amendment, because any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt.  *Blakely,* 542 U.S. at 301 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

Unlike the State of Washington's determinate sentencing system, the State of Michigan has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum term.  The maximum sentence is not determined by the trial judge, but is set by law. *See People v. Drohan,* 715 N.W.2d 778, 789-91 (Mich. 2006) (citing MICH. COMP. LAWS § 769.8).  Only the minimum sentence is based on the applicable sentencing guideline range. *Id.*; *and see People v. Babcock*, 666 N.W.2d 231, 236 n.7 (Mich. 2003) (citing MICH. COMP. LAWS § 769.34(2)).  The Sixth Circuit authoritatively has held that the Michigan indeterminate sentencing system does not run afoul of *Blakely*.  *See Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) (affirming district court's dismissal of prisoner's claim under *Blakely v. Washington* because it does

not apply to Michigan's indeterminate sentencing scheme); *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007). Therefore, the state court's determination of Petitioner's claim was not contrary to federal law clearly established by the United States Supreme Court or an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

### D. **Grounds VI and VIII: *Brady* Claims**

In his Sixth Ground for habeas corpus relief, Petitioner contends that the trial court violated his constitutional rights by denying his post-judgment motion for discovery of police internal affairs reports concerning the underlying incident. Petitioner further claims in Ground VIII that the prosecutor failed to timely disclose critical *Brady* material showing that Officer Vargas was under investigation for excessive use of force. An unconditional guilty plea constitutes a waiver of all pre-plea non-jurisdictional constitutional deprivations. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *Kowalak v. United States*, 645 F.2d 534, 537 (6th Cir. 1981). In *Campbell v. Marshall*, 769 F.2d 314, 321 (6th Cir. 1985), the Sixth Circuit held that a defendant may still argue that his plea was invalid because it was made in the absence of *Brady* material. However, other courts have held that the failure to disclose exculpatory information prior to the taking of a plea does not render the plea involuntary or constitute a *Brady* violation. This reasoning was explained by the Fifth Circuit: "Because a *Brady* violation is defined in terms of the potential effects of undisclosed information on a judge's or jury's assessment of guilt, it follows that the failure of a prosecutor to disclose exculpatory information to an individual waiving his right to a trial is not a constitutional violation." *Matthew v. Johnson*, 201 F.3d 353, 361–62 (5th Cir. 2000).

The continued validity of *Campbell* is called into question by the Supreme Court's more recent decision in *United States v. Ruiz*, 536 U.S. 622 (2002). In that case, the Court held that

- 25 -

a plea is not rendered invalid by the prosecutor's failure to disclose exculpatory impeachment information prior to the entry of the plea. *Id.* at 628–33. While the Court expressly declined to consider whether this rule also applied to exculpatory substantive evidence, the Court's reasoning focused on the *Brady* rule's connection to the truth-finding function at trial, suggesting that the holding in *Ruiz* extends to exculpatory substantive evidence as well. Indeed, at some points, the Court did not distinguish between the two types of exculpatory evidence, going so far as to note that "due process considerations, the very same considerations that led this Court to find trial related rights to exculpatory and impeachment information in *Brady* and *Giglio*, argue against the existence of the 'right'" to pre-plea disclosure. *Ruiz*, 536 U.S. at 631.

Even if the Sixth Circuit cases recognizing such a right survive *Ruiz*, those cases alone cannot provide a right to habeas relief. Under § 2254, habeas relief is available only if the state court violated clearly established federal law as determined by the Supreme Court. See 28 U.S.C. § 2254(d)(1). In light of the reasoning of *Ruiz*, the Court's repeated description of *Brady* as grounded in the right to a fair trial, the lack of any Supreme Court precedent requiring *Brady* material to be disclosed prior to the entry of a guilty plea, and the split among the courts of appeals on this issue, it cannot be said that the right petitioner seeks to invoke here constitutes clearly established law under § 2254(d)(1). Accordingly, the Court should conclude that Petitioner is not entitled to habeas relief on this claim.

## Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.


Dated:  July 2, 2013                    /s/ Hugh W. Brenneman, Jr.
                                        HUGH W. BRENNEMAN, JR.
                                        United States Magistrate Judge


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).